IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.  CASE NO. 1:88-CR-1026-MMP/AK

DANIEL WRIGHT,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Doc. 3328, motion to vacate, set aside, or correct sentence, by the defendant, Daniel Wright. The Government has filed its response, Doc. 3333, and Defendant has filed a reply. Doc. 3334. This cause is therefore in a posture for decision. Having carefully considered the matter, the Court recommends that the motion to vacate be denied.

Defendant Daniel Wright and others were indicted in a multi-count superseding indictment with various drug offenses. More specifically, Defendant was charged in Count Two of the Fourth Superseding Indictment with conspiracy to import more than 1,000 kilograms of marijuana, more than 1 kilogram of hashish oil, and more than 5 kilograms of cocaine and in Count Three with conspiracy to possess with intent to

distribute those drugs.  Following a lengthy trial, Defendant was convicted on both counts and sentenced to concurrent 262-month terms of imprisonment.  This sentence was based, in part, on a finding that the conspiracy involved 22,500 pounds or 10,227.272 kilograms of marijuana.  At sentencing, Defendant admitted that he should be held responsible for 2,700 pounds of marijuana.

That sentence was later vacated, although on resentencing the term of imprisonment remained unchanged.  Defendant appealed his sentence, raising, *inter alia*, that the Court committed *Apprendi* error at resentencing.  In that regard, the Eleventh Circuit found:

> Having considered the record in this case in light of the positions the parties have taken in their briefs, we conclude that although the district court plainly erred in sentencing Wright when the quantity of drugs was neither specified in the indictment nor established by the jury beyond a reasonable doubt, his substantial rights were not affected and the error did not seriously affect the fairness, integrity, or public reputation of judicial proceedings. We so conclude because Wright's admission at the original sentencing hearing regarding the quantity of drugs for which he was held responsible placed him in the enhanced sentencing range....For the same reason, Wright's substantial rights were not affected by the court's failure to submit the issue of drug quantity to the jury.

The instant petition ensued.  On this occasion, Defendant claims there was prosecutorial misconduct when the Government failed to advise defense counsel of *Apprendi* at the resentencing hearing.  *Apprendi* had been decided on June 26, 2000, approximately six weeks prior to resentencing.  *See Apprendi v. New Jersey*, 530 U.S. 466 (2000).  Quoting *Berger v. United States*, 295 U.S. 78 (1935), Defendant argues that

the Assistant United States Attorney who represented the Government at resentencing, William Wagner, "disregarded his duty and engaged in conduct designed to improperly prevent [Defendant] from receiving benefit of the recent Apprendi ruling...."  In Defendant's view, Wagner's failure to apprise the Court of *Apprendi* deprived Defendant of "the lesser punishment mandated by the statutes to marijuana."

Beyond his lengthy *Apprendi* argument, Defendant cites no authority implicating a Defendant's constitutional or statutory rights in a situation analogous to the one he alleges.  Certainly, as Defendant points out, counsel for the Government may not employ any "improper methods calculated to produce a wrongful conviction," *Berger v. United States*, 295 U.S. 78 (1935), there was no wrongful conviction here.  Even assuming that the Court was totally unaware of *Apprendi* at the time of resentencing (which is a tremendous assumption) and that counsel for the Government was required to advise the Court of that decision, *see* Fla. Rules of Prof'l Conduct R. 4-3.3(a)(3) & cmt. (2006) (lawyer shall not knowingly fail to disclose legal authority known to be directly adverse to client's position; lawyer is not required to make disinterested exposition of law but must recognize existence of pertinent legal authorities), Defendant was not deprived of the opportunity to press his *Apprendi* argument with the appellate court, an argument which was flatly rejected based on Defendant's own admissions at the original sentencing.  This argument is therefore without merit.

Defendant also alleges that his trial counsel, Terry Silverman, "labored under an

actual conflict of interest" because the attorney for one of the co-defendants, Steve Scheck, failed to inform the Court or Mr. Silverman that he had previously represented the sister of Assistant United States Attorney David McGee, who was one of the Government attorneys during the trial of this case.  According to Defendant, Mr. Scheck "may have informed the prosecution of defense tactics and facts before and during trial" or Mr. McGee's sister "may have even stole the files of the defense strategy that Mr. Silverman and the other attorneys had develop[ed] for the trial in this case."  (Emphasis omitted).  In Defendant's view,

> That there was an actual conflict is beyond cavil. Mr. Scheck was the lead...counsel for the defense counsel in this case, but did not report the possible conflict to the Court, instead, Mr. Scheck discuss[ed] this conflict with the prosecution Mr. McGee, who wanted nothing to do with the possible conflict of interest allegation.  Subsequently the Court learned of the possibility after trial and replace[d] Mr. Scheck, with Mr. Scott to represent Co-defendant Squires at sentencing.  Indeed, Mr. Scheck would have been privilege to all defense strategy and in every likelihood pass the intentions of the defense team to the prosecutor....Counsel Scheck was so entangled by his conflict of the dual representation that he was rendered impotent to advance the interests of the defense team as lead counsel.  This conflict had a detrimental effect on [Defendant], in that it resulted in his attorney no knowing that the plans they were making as a defense team was being pass[ed] on to the U.S. Attorney's office through Mr. Scheck to Mr. McGee.

To prevail on this claim, Defendant must point to  "specific instances in the record that 'demonstrate that an actual conflict of interest adversely affected his lawyer's performance.'" *Caderno v. United States*, 256 F.3d 1213, 1218 (11th Cir. 2001) (quoting *Cuyler v. Sullivan*, 528 U.S. 1082 (1980)).  A "'speculative or hypothetical conflict...does not violate the

Constitution.'" *Caderno*, 256 F.3d at 1218 (citation omitted).

At best, Defendant's allegations are speculative and hypothetical, requiring this Court to make suppositions of nefarious conduct between Mr. Scheck and Mr. McGee and Mr. McGee's sister that then somehow affected Mr. Silverman's representation of instant Defendant. There is no evidence to support any contention that Mr. Silverman's representation of Defendant was anything other than above board or that it was adversely affected by anything that these other persons may have done. In short, this claim is without merit.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendant's motion to vacate, Doc. 3328, be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this   5th    day of July, 2006.

s/ A. Kornblum
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**

### NOTICE TO THE PARTIES

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

*Case No: 1:88-cv-1026-MP*